JONES, *Respondent,*

*v.*

NORTHSIDE FORD TRUCK SALES, INC.,
*Appellant.*

556 P2d 117

*Jon W. Nickel,* of Tonkon, Torp & Galen, Portland, argued the cause and filed briefs for appellant.

*Thomas J. Barnett,* of Bloom, Chaivoe, Ruben, Marandas & Berg, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and McAllister, Holman and Howell, Justices.

HOWELL, J.

**HOWELL, J.**

This is an action for damages for fraud and breach of warranty arising out of plaintiff's purchase of a dump truck from the defendant. The jury returned a verdict for plaintiff, and defendant appeals from the judgment entered on that verdict.

Plaintiff purchased a new Ford dump truck from defendant in October, 1973. Plaintiff testified that he told defendant's salesman that he wanted a dump truck with a 10 x 12 yard box[1] which could carry a legal gross weight of 48,000 pounds.[2] Defendant's salesman showed plaintiff a Ford truck which was rated by the manufacturer for a maximum gross weight of 52,000 pounds but which did not have a dump box mounted on its chassis. At plaintiff's request, defendant's salesman arranged to have a 10 x 12 yard box installed by Fruehauf Corporation.

Before closing the deal, defendant's salesman gave plaintiff a general explanation of the various warranties on the truck and its components and promised to have a radio installed. Although the radio apparently was ordered and eventually arrived at defendant's place of business, it was never installed in plaintiff's truck. Meanwhile, plaintiff became dissatisfied with defendant's warranty service when some defects were not remedied, even after several attempts by plaintiff to have them corrected. Plaintiff also found that he could legally carry only 44,000 pounds (gross weight) of sand and gravel because the Fruehauf 10 x 12 box did not distribute enough of the weight of the load to the front axle and, consequently, more than the legal maximum weight was placed on the rear axles when he carried more than 44,000 pounds. Although defendant agreed to alleviate part of this problem by moving

---

[1] A 10 x 12 yard dump box is one which is capable of carrying approximately 10 yards of loose material and which can hold up to 12 yards if the sides are extended with wooden planks.

[2] Gross weight refers to the total weight of the truck plus its load. Legal gross weight is regulated by statute. *See* ORS 483.506.

the rear axles further back, and plaintiff brought in the truck for this purpose, that work was never done. A dispute had arisen over some contested warranty work, and defendant refused to proceed with any further repairs.

Plaintiff's complaint contained causes of action for both fraud and breach of warranty. Count One alleged that the defendant falsely represented that the truck had a legal gross weight of 48,000 pounds, that the 10 x 12 Fruehauf box was the proper size for the chassis, that defendant would install a radio, and that defendant would make all necessary repairs during the first 12,000 miles, and sought damages for fraud. Count Two alleged essentially the same conduct and sought damages for breach of warranty. Defendant's motions for a directed verdict were denied. The jury returned a general verdict for plaintiff, assessing both actual and punitive damages against the defendant. They also brought in a special verdict which upheld plaintiff's first three allegations of fraud.[3] On appeal, defendant's primary contention is that the evidence does not support a finding of fraud.

It is undisputed that the legal maximum gross weight for the truck sold to plaintiff was 47,200 pounds. Under ORS 483.506, the front axle is allowed 550 pounds for each inch of tire width. The two front tires on the truck sold to plaintiff were each 12 inches wide, thereby allowing for a total weight of 13,200 pounds on the front axle. Tandem axles are allowed a straight total of 34,000 pounds. The sum of these two totals, 47,200 pounds, establishes the maximum legal gross weight of plaintiff's truck. Plaintiff's testimony shows that the legal gross weight for his truck was established at *about* 48,000 pounds by calculating the size of the front tires which would be necessary for such a weight:

"Q. Any discussion about the size of the tires that were on the truck?

---

[3]Plaintiff's fourth allegation of fraud was not submitted to the jury because plaintiff did not introduce any evidence that the defendant never intended to perform the warranty repairs.

"A. [Plaintiff] The only thing was we figured we needed twelve hundred on the front—twelve hundred twenties on the front and tens on the back.

"Q. You say, 'we figured'?

"A. Meaning Mr. Tivey [defendant's salesman].

"Q. How did you arrive at that conclusion?

"A. *Well, run about 48,000,* what they had to have on the front is 12. Twelve hundred twenties." (Emphasis added.)

Apparently, plaintiff does not now contend that he did not understand the results of this calculation or that the figure for total allowable weight under Oregon law, 47,200 pounds, was misrepresented to him. Moreover, there is no indication that this 47,200 pounds legal weight was not within an acceptable range of plaintiff's figure of "about" 48,000 pounds. Rather, plaintiff now argues that his truck could haul only a legal maximum gross weight of 44,000 pounds *of sand and gravel* because too large a percentage of the load was placed over the rear axles when that much loose material was loaded into the 10 x 12 dump box. Although defendant's salesman knew that plaintiff intended to haul sand and gravel, there is no allegation and no evidence that defendant's salesman ever actually represented that plaintiff's truck could carry more than 44,000 pounds (gross weight) *of sand and gravel* in the 10 x 12 dump box plaintiff wanted. The allegation of fraud and the evidence concerning defendant's representation relate only to the legal gross weight of the truck under Oregon law. Therefore, we do not believe that this issue should have been presented to the jury.

Plaintiff also argues that defendant's salesman falsely represented that the 10 x 12 Fruehauf box was the proper size for the truck's chassis. Plaintiff contends that the box was several inches too long for his vehicle, and he introduced testimony to that effect. However, the evidence discloses that, although plaintiff apparently would have preferred a different brand of dump box, he chose Fruehauf because they were

[ 689 ]

able to make faster delivery. Moreover, the uncontradicted testimony of both defendant's salesman and the Fruehauf representative shows that when the salesman called Fruehauf he was told that their 10 x 12 box would fit plaintiff's truck. There was also other testimony that although an 8 x 10 box was the normal size for such a truck, larger boxes could be used for some operations and that plaintiff definitely wanted the 10 x 12 size. The evidence further discloses that Fruehauf has only one box length in the 10 x 12 size, although other manufacturers make several shorter lengths. Additionally, when plaintiff later complained that the box was too long for the chassis, defendant offered to extend the chassis several inches.

We do not believe that this record contains any clear and convincing evidence that the defendant either intentionally or recklessly misrepresented to plaintiff that the Fruehauf 10 x 12 box was the proper size for the truck's chassis in order to deceive plaintiff and to induce him to purchase the truck. The overwhelming evidence was to the contrary, and it was uncontradicted.

■ The final allegation of fraud which was submitted to the jury[4] relates to defendant's promise to install a radio in plaintiff's truck. The promise was made by defendant's salesman, but the jury could have found that it was made on behalf of the defendant corporation. The radio was ordered, and it eventually arrived, but it was never installed.

We have previously held that:

> "Fraud can never be predicated upon a promise to do something in the future unless it is alleged and proven that, at the time of the making of the promise, there was no present intention of performance or, alternatively, that the promise was made with reckless disregard as to whether the promissor could or could not perform." *Webb v. Clark,* 274 Or 387, 393 n.2, 546 P2d 1078 (1976).

*See also, Mulvihill v. Pacific Land Mgt.,* 276 Or 253,

[4]See n. 3, *supra.*

257, 554 P2d 488 (1976); *Sproul v. Fossi,* 274 Or 749, 548 P2d 970 (1976); *Weiss v. Northwest Accept. Corp.,* 274 Or 343, 346, 546 P2d 1065 (1976). Moreover, proof of the defendant's eventual failure to perform the agreement is not a sufficient basis for an inference that the defendant never intended to perform. *See Webb v. Clark, supra; Weiss v. Northwest Accept. Corp., supra; Conzelmann v. N.W.P. & D. Prod. Co.,* 190 Or 332, 352, 225 P2d 757 (1950) ("Other circumstances of a substantial character must be shown in addition to nonperformance before such inference of wrongful intent may be drawn."). *See also Sproul v. Fossi, supra* at 752-53.

We do not believe that plaintiff produced sufficient evidence to show that defendant's salesman did not intend to keep his promise to provide plaintiff with a radio or, alternatively, that he made such a promise with reckless disregard for whether he could or could not perform. Although the radio was not included in the purchase order or the installment sale agreement, plaintiff's own testimony shows that he previously had been told that the radio would not be included in the paper work, but would be handled as a separate agreement. According to the defendant, the delay of several months which intervened between the sale of the truck and the execution of the work order for the installation of plaintiff's radio was due to a problem in obtaining extra radios from defendant's supplier. It also appears that defendant's failure to actually install the radio was a result of the dispute which arose over some contested warranty work. Defendant's refusal to install the radio because of this dispute may have been wrongful; however, it does not establish that the defendant never intended to do the work.

In short, we find no substantial circumstantial evidence which would support an inference that the defendant never intended to perform its agreement. Therefore, we conclude that the issue should not have been submitted to the jury.

We have determined that, as a matter of law, plaintiff failed to present clear and convincing evidence of fraud. This precludes the recovery of any punitive damages. However, plaintiff's case also included a count for breach of warranty on the basis of essentially the same allegations, and both causes of action were submitted to the jury. The essential difference between the two causes of action is that in an action for breach of warranty it is not necessary to show the existence of any fraudulent intent.

■■ The defendant also contends that the court erred in denying its motion for a directed verdict on the breach of warranty count. Defendant's motion for a directed verdict was as follows:

> "MR. NICKEL: Your Honor, at this time, the defendant wants to raise that directed verdict motion for both counts we could go through each allegation individually, because I feel that not only, but also for each of the individual representations there is not sufficient evidence to present this case to the jury."

However, the record discloses that there was evidence in this case from which the jury could find that defendant did breach its warranties concerning the size of the dump box, the installation of the radio, and the performance of necessary repairs. Moreover, although we have already concluded that the evidence was insufficient to show any misrepresentation of the actual legal gross weight of the truck, defendant made no motion to strike that allegation from the breach of warranty count of plaintiff's complaint. Therefore, the error in submitting this allegation to the jury was not properly preserved.

The defendant attempts to raise the same question in an assignment of error predicated on the denial of defendant's motion for a judgment n.o.v. and, in the alternative, for a new trial. The motion stated in part:

> "1. The court erred in permitting the jury to consider the warranty alleged concerning the legal weight of the truck. There can be no claim for breach of warranty as to matters of law."

■ Both aspects of this assignment of error are defective. Defendant was not entitled to a judgment n.o.v. for the reasons discussed in connection with his motion for a directed verdict. In considering the denial of a motion for a new trial, the defendant is required to point to some place in the record where the alleged error was preserved. As we have noted, the defendant did not move to strike and remove from the consideration of the jury the allegation of a breach of warranty concerning the gross weight of the truck. The defendant should have done so and then assigned as error the failure of the court to strike the allegation.

■■ Defendant also contends that plaintiff did not introduce sufficient evidence to prove the general damages. The jury awarded $5,000 general damages and $30 special damages. Plaintiff's testimony as to the amount of his damages was rather general. However, we believe that it was sufficient to allow the matter to go to the jury. Under Oregon law, the owner of a vehicle can testify as to its market value. *See, e.g., Richmond v. Fields Chevrolet Co.,* 261 Or 186, 197-98, 493 P2d 154 (1972); *State v. Lewis,* 248 Or 217, 220, 433 P2d 617 (1967); *Lewis v. Worldwide Imports, Inc.,* 238 Or 580, 586-87, 395 P2d 922 (1964). Plaintiff testified that, as a result of defendant's conduct, the actual market value of the truck was $5,000 less than the price he paid for it. This testimony was challenged on cross-examination, but we believe that the amount of plaintiff's damages remained a question of fact for the jury. *See Otte v. Ron Tonkin Chevrolet Co.,* 264 Or 265, 273-74, 503 P2d 716 (1972); *Medford National Bank v. Blanchard,* 136 Or 467, 473, 299 P 301 (1931). Therefore, we conclude that the portion of the judgment relating to general and special damages was proper.

■ Finally, defendant contends that the trial court erred in awarding plaintiff attorney fees. The attorney fees were allowable under the contract for the purchase of the truck. Section 6 of the agreement stated:

"In the event that legal action upon this order is

instituted by either party hereto, the prevailing party in such action shall be entitled to receive from the other party such reasonable attorneys' fees as the court may fix."

The court awarded plaintiff $4,100 for attorney fees. However, upon the remand the trial court may consider a modification of that award in light of our elimination of the punitive damages.

In summary, plaintiff is not entitled to recovery on the charge of fraud. There was evidence to support the verdict on the allegations of breach of warranty, but the plaintiff is not entitled to a recovery of punitive damages on those allegations. Therefore, the trial court is directed to enter a judgment for plaintiff in the amount of the general and special damages, together with the attorney fees it now considers appropriate.

Modified and remanded.